# STATE, Relator, *v.* STATE BOARD OF EQUALIZATION

## ET AL., RESPONDENTS.

(No. 4,478.)

(Submitted October 8, 1919.   Decided November 6, 1919.)

[185 Pac. 708.]

*Mandamus — Constitution — Taxation — Assessment — Electric Power Plants—State Board of Equalization—Powers—Statutes and Statutory Construction—"Expressio Unius," etc.*

Taxation—Electric Power Plants—State Board of Equalization—Power to Make Original Assessments—Constitution—Statutes.
1.   By section 16, Article XII, of the Constitution, the legislature is vested with plenary power in matters of the assessment of property for purposes of taxation, including the power to designate the agency through which the assessment shall be made; hence section 1, Chapter 48, Laws of 1919, which authorizes the state board of equalization to make an original assessment of the rights of way, pole and transmission lines, distributing systems, *etc.*, of electric power companies, is not constitutionally objectionable as conferring the power upon an unauthorized agency.

[As to valuation of railroad property for purpose of taxation, see note in **Ann. Cas.** 1917A, 1079.]

Constitution—Construction—*"Expressio Unius"* Doctrine.
2.   The maxim *"expressio unius est exclusio alterius"* is a rule of interpretation, and cannot be made to serve as a means of restricting the plenary power of the legislature nor to control an express provision of the Constitution.

Same—Nature of Instrument.
3.   The Constitution is not a grant of, but a limitation upon the powers of the legislature.

Same—Legislature—Extent of Power.
4.   Under the rule above (paragraph 3), where the constitutionality of a statute is in question, the inquiry is not whether the legislature had the power to enact it under express terms in the Constitution, but whether there is aught in that instrument which forbade it from enacting it.

Same—State Board of Equalization—Powers.
5.   *Obiter:* The provisions of the Constitution being mandatory and prohibitory, the legislature cannot take from the state board of equalization the power conferred upon it by section 16, Article XII thereof, to assess railroad property, nor vest such power elsewhere.

Taxation—State Board of Equalization—Powers—Constitution.
6.   *Held,* under the rule declared in paragraph 2 above, that the contention that by conferring the power of assessing the property of railroads upon the state board of equalization (Art. XII, sec. 16), the Constitution impliedly excluded all other powers of original assessment, is without merit.

Same—Assessment—By Whom Made—Rights of Taxpayer.

7.  So long as the principles of uniformity and just valuation of his property for taxation purposes, guaranteed by the Constitution, are observed by the assessing officers, the taxpayer may not insist upon the right to have his assessment made, in the first instance, by any particular officer, or to have it equalized by any particular reviewing board.

Same—Electric Power Plants—Assessment—Statutes—Construction.

8.  Since Chapter 49, Laws of 1919, relating to the assessment of electric power and transmission lines, does not repeal existing statutes on the subject of assessment of property for taxing purposes, it must be treated as a supplement thereto, and its various sections and those of other Acts *in pari materia,* construed together.

Statutory Construction—Validity—Rule.

9.  In construing a statute, every reasonable doubt is to be resolved in favor of its validity, and an interpretation which will nullify it should not be given it unless it is clearly necessary.

Taxation—Assessment—Electric Power Plants — Mileage Basis — Constitution.

10.  *Held,* that that part of section 6, Chapter 49, of Laws of 1919, which prescribes that when the value of the entire property of, *inter alia,* power and transmission lines, wherever situated has been ascertained by the state board of equalization, its value for taxation shall be that portion of the total value of the entire plant and property, wherever situated, that the total mileage within this state bears to the total mileage wherever situated after deducting from such portion the total assessed value of the property which has been assessed by the county assessors, does not establish an arbitrary rule of assessment or require the assessment of property situate outside the state, but only requires that the total value of the plant, wherever situated, shall be taken into consideration in determining the actual cash value, for taxation, of that portion of the plant and property situated within the state.

Same—State Board of Equalization—Assessment of Electric Power Plants—*Mandamus.*

11.  *Held,* that, the state board of equalization being an agency created by the Constitution with well-defined powers, discretionary in character, and Chapter 49, Laws of 1919, not attempting to direct the board as to the method or means to be pursued by it in arriving at the actual value of the property of electric power corporations, the supreme court cannot, by writ of mandate, interfere and direct the board how to make the assessment; so long as it is not guilty of fraud and does not adopt a fundamentally wrong principle of assessment, courts cannot interpose.

Original application for *mandamus,* by the State on the relation of the Attorney General, to compel the State Board of Equalization to make certain assessments of property of the Montana Power Company, the Great Falls Power Company, and other companies of the same nature, in accordance with the provisions of section 1, Chapter 48, and section 6, Chapter 49, of the Laws of 1919. Motion to quash the alternative writ and dismiss the proceeding overruled, and respondents given leave

to answer within ten days; otherwise peremptory writ ordered
to issue.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,*
Assistant Attorney General, for the Relator, submitted a brief,
and one in reply to the briefs· filed by *Mr. John G. Brown,* for
Respondent Board, and *Mr. W. B. Rodgers, Mr. D. M. Kelly* and
*Mr. Henry C. Smith, Amici Curiae.*

While it is true that ordinarily *mandamus* will not lie to con-
trol, direct or review the actions of assessing boards or officers,
yet there are certain exceptions to this rule.   One exception is
where there is actual fraud in making the assessment, or where
there is conduct so oppressive, or arbitrary, or capricious as to
amount to fraud, or where · the assessed value is so grossly
in excess of or below the true value as to show a failure to
exercise sound judgment ·or discretion.   Here, with reference
to the assessments made by the county assessors, we set out in
our petition and affidavit that the property assessed by the
county assessors was assessed at only forty per centum of its
full cash value and not at its full cash value as required by the
statute, and that the property was assessed at such values upon
the representations and statements of the owners that such
values were the full cash values thereof, which statements and
representations the county assessors believed to be true.   And
that it was by reason of being misled by these statements that
the county assessors assessed the property at such values.   This
in effect charges that the county assessors did not exercise any
judgment or discretion whatever but blindly accepted the state-
ments of the property owners as to its value.   We further
charge that the county assessors failed to take into considera-
tion any matters or facts, or any of the conditions or circum-
stances connected with the property and its use, and which affect
the value thereof, but relied solely and wholly on the values as
stated and represented by the property owner.

With reference to the assessments attempted· to be made by
the state board of equalization, we charge that the board fixed

the values without any reason whatever for so doing, and that they failed to take into consideration any matters of facts, or any of the conditions or circumstances connected with the property and its use, and which affect the value thereof. In other words, we charge they simply placed an arbitrary valuation on the property and nothing else.

We further charge that in attempting to assess the property of these corporations the board did not attempt to assess the property of each corporation separately, but valued and assessed all of the property of all four corporations *en masse.*

All of the facts and circumstances which we have set forth in the petition and affidavit with reference to the assessments by the county assessors and the state board are sufficient allegations of fraud, and are sufficient to establish the fraudulent character of the assessments. (*State* v. *Savage,* 65 Neb. 714, 91 N. W. 716; *Chicago, B. & Q. Ry. Co.* v. *Cole,* 75 Ill. 591; *People* v. *Hibernian Banking Assn.,* 245 Ill. 522, 92 N. E. 305.)

Another exception is where the statute gives the tax officers or boards no discretion, but requires them to proceed in a certain specified manner when making assessments or equalizing valuations, and the tax officer or board fails or refuses to comply with the statutory requirements. In such a case *mandamus* will lie to compel the officer or board to make the assessment in the manner required by the statute. (*Calumet etc. Dock Co.* v. *O'Connell,* 265 Ill. 106, 106 N. E. 452; *Huidekeper* v. *Hedley,* 177 Fed. 1, 40 L. R. A. (n. s.) 505, 100 C. C. A. 395; *People* v. *Strother,* 67 Cal. 624, 8 Pac. 383; *People* v. *Wilson,* 119 N. Y. 515, 23 N. E. 1064; *State* v. *Cromer,* 35 S. C. 213, 14 S. E. 493; *State* v. *Boyd,* 35 S. C. 233, 14 S. E. 496; *State* v. *Covington,* 35 S. C. 245, 14 S. E. 499; *State* v. *Buchanan,* 24 W. Va. 362; *Dillon* v. *Bare,* 60 W. Va. 483, 56 S. E. 390; *State* v. *Lafayette Co.,* 3 Wis. 816; *United States* v. *Jimmerson,* 222 Fed. 489, 138 C. C. A. 85.)

Here we state, with reference to the assessments made by the county assessors, that they assessed certain property which they had no authority or power to assess, but which is required by

the statute to be assessed by the state board of equalization. We further state that the state board of equalization knew that the assessors had assessed this property, but notwithstanding such fact, the state board refused to strike such property from the assessments of the county assessors and refused to comply with the statute and assess such property as a state board of equalization. In other words, we charge that the statute required this property to be assessed in a certain manner by the state board, but that such board refused to assess the property, but permitted the county assessors to assess the same. We further charge that the statute requires the state board to assess certain property, and requires the state board to proceed in a certain specified manner in determining the value of such property, and that the state board wholly disregarded the statute, failed to determine the value of the property in the manner therein specified, but determined the value of such property in an entirely different manner. By the writ we seek to compel the state board to act in the manner specified in the statute, first by striking from the county assessment the assessments of the property which the state board is required to assess, and, second, to act by determining the value of the property required to be assessed by the state board in the manner specified by the statute. In other words, the state board having acted in utter disregard of the statute, we seek to compel them to act, and in so acting to comply with the provisions and requirements of the statute.

Counsel contend that so much of Chapter 48 of Laws of 1919 as attempts to grant to the state board of equalization the power to act as assessing board by assessing property other than that of railroads is unconstitutional, citing two decisions of this court, *viz., State ex rel. Wallace* v. *State Board of Equalization,* 18 Mont. 473, 46 Pac. 266, and *State ex rel. State Board of Equalization* v. *Fortune,* 24 Mont. 154, 60 Pac. 1086, in support of such contention. An examination of those cases shows that the question here involved, the power of the legislature to grant to the state board of equalization authority to act as an original assessing board, was not there under consideration. The only

question before the court in those cases was the power which the board might exercise in equalizing assessments, nothing more. And in those two cases the court followed the decision of the supreme court of Colorado in the case of *People ex rel. Crawford* v. *Lothrop*, 3 Colo. 428, saying that from the similarity of the provision of our Constitution, section 15, Article XII, and that of the Colorado Constitution, section 15 Article X, we may be said to have adopted the provisions of the Colorado Constitution.

The Colorado legislature enacted a law requiring the property of railroad, telegraph, telephone, palace-car, sleeping-car, fast freight and express companies to be assessed by the state board of equalization. The law was attacked, it being there, as here, contended that it was unconstitutional, as the legislature had no power to make the state board an assessing board, but the constitutional provisions required all property to be assessed by county assessors. The court, however, refused to sustain such contention, holding that as section 8 of Article XIV did not prescribe the duties of a county assessor, there was nothing in the Constitution to prohibit the legislature from conferring power on the state board of equalization to assess such property. (*Ames* v. *People*, 26 Colo. 83, 56 Pac. 656; *Carlisle* v. *Pullman P. C. Co.*, 8 Colo. 320, 54 Am. Rep. 553, 7 Pac. 164; *Denver etc. Ry. Co.* v. *Church*, 17 Colo. 1, 31 Am. St. Rep. 252, 28 Pac. 468; *Hall* v. *American R. Transit Co.*, 24 Colo. 291, 65 Am. St. Rep. 223, 56 L. R. A. 89, 51 Pac. 421; see, also, *Board of State Tax. Commrs.* v. *Board of Assessors*, 124 Mich. 491, 83 N. W. 209; *Missouri River etc. Ry. Co.* v. *Morris*, 7 Kan. 210; *People* v. *Pitcher*, 56 Colo. 343, 138 Pac. 509; *State ex rel. Morton* v. *Back*, 72 Neb. 402, 69 L. R. A. 447, 100 N. W. 952; *Chicago & N. W. Ry. Co.* v. *State*, 128 Wis. 553, 108 N. W. 557; *Ewert* v. *Taylor*, 38 S. D. 124, 160 N. W. 797; *The Hub* v. *Hanburg*, 211 Ill. 43, 71 N. E. 826; *Chicago, B. & Q. Ry. Co.* v. *Richardson*, 72 Neb. 482, 100 N. W. 950.) And this court had effectually disposed of this question and adversely to the contention of re-

spondents in the case of *Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093.

Respondents contend that section 6 of Chapter 49 is unconstitutional as providing, in the case of a company whose property is operated partly within and partly without the state, an interstate property, for the taxation of property without the state.

In most of the cases where this question has been raised it has been raised as a federal question, and in many of the authorities which we have cited, particularly those of the supreme court of the United States, and in the federal circuit courts and circuit courts of appeal, this particular question has been considered and disposed of adversely to the contention of respondents. (*Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530, 31 L. Ed. 790, 8 Sup. Ct. Rep. 961; *Attorney General of Massachusetts* v. *Western Union Tel. Co.,* 141 U. S. 40, 35 L. Ed. 628, 11 Sup. Ct. Rep. 889; *Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1, 41 L. Ed. 49, 16 Sup. Ct. Rep. 1054; *Cleveland etc. Ry. Co.* v. *Backus,* 154 U. S. 439, 38 L. Ed. 1041, 14 Sup. Ct. Rep. 1122; *Adams Express Co.* v. *Ohio State Auditor* (*Sanford* v. *Poe*), 165 U. S. 194, 41 L. Ed. 683, 17 Sup. Ct. Rep. 305, [see, also, Rose's U. S. Notes]; *Atchison, T. & S. F. Ry. Co.* v. *Sullivan,* 173 Fed. 456, 97 C. C. A. 1; *Louisville & Nashville Ry. Co.* v. *Greene,* 244 U. S. 522, Ann. Cas. 1917E, 97, 61 L. Ed. 1291, 37 Sup. Ct. Rep. 683.)

Respondents may not attack the constitutionality of these acts. Only those persons who are injuriously affected by the alleged unconstitutionality of the statute may be heard to object to it on that ground, and here the state board of equalization is not and cannot possibly be injured in any manner whatever if the provisions of the statute should be complied with by such board. (*Ames* v. *People,* 26 Colo. 83, 56 Pac. 656; *People* v. *Leddy,* 53 Colo. 109, 123 Pac. 824; *People ex rel. State Board* v. *Pitcher,* 56 Colo. 343, 138 Pac. 509; *Ghee* v. *Northern Union Gas Co.,* 158 N. Y. 510, 53 N. E. 692; *Board of Public Works* v.

*Denver Tel. Co.,* 28 Colo. 401, 65 Pac. 35; 12 .Corpus Juris, 765.)

Value for taxation: Section 2501, subdivision 3, paragraph 5, Revised Codes of 1907, defines "value" and "full cash value" as follows: "The terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt 'due from a solvent creditor." Section 2502, Revised Codes of 1907, requires that all taxable property must be assessed at its full cash value, and this is mandatory (1 Cooley on Taxation, 753). In the case of *Hilger* v. *Moore,* recently decided by this court, in which the constitutionality of Chapter 113, Session Laws of 1919, was upheld, this court said that neither section 2501 nor section 2502 were amended by such Chapter, such Act being merely supplementary to such sections. The provisions of sections 2501 and 2502 apply to the assessment of all taxable property, that of railway, telegraph, telephone, electric power, and other corporations, as well as that of individuals. (*State* v. *Virginia & T. R. Co.,* 23 Nev. 283, 35 L. R. A. 759, 46 Pac. 723.)

Statutes providing for the valuation of property for taxation as a unit or system have been so uniformly sustained that the constitutionality of such a statute cannot be questioned. (See Judson on Taxation, 2d ed., secs. 258–280; Beale on Foreign Corporations and Taxation of Foreign and Domestic Corporations, sec. 506; Gray on Limitation of Taxing Power, secs. 149, 1461–1471; *Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1, 41 L. Ed. 49, 16 Sup. Ct. Rep. 1054; *Cleveland, G. C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 439, 38 L. Ed. 1041, 14 Sup. Ct. Rep. 1122; *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 421, 38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114; *Adams Express Co.* v. *Ohio St. Auditor,* 165 U. S. 194, 41 L. Ed. 683, 17 Sup. Ct. Rep. 305; *Adams Express Co.* v. *Ohio St. Auditor* (rehearing), 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. Rep. 604; *Adams Express Co.* v. *Kentucky,* 166 U. S. 171, 41 L. Ed. 960, 17 Sup. Ct. Rep. 527 [see, also, Rose's U. S. Notes].)

Chapter 48, Session Laws of 1919, is not to be considered and construed, standing alone, as a separate and independent law, neither is Chapter 49, Session Laws of 1919, to be so considered and construed, .but they are both to be considered as amendatory of and supplementary to the general tax laws, and all are to be construed together as one Act. (*Western Union Tel. Co.* v. *Taggart,* 141 Ind. 281, 60 L. R. A. 671, 40 N. E. 1051, 1052; affirmed in 163 U. S. 1, 41 L. Ed. 49, 16 Sup. Ct. Rep. 1054; *State* v. *Adams Express Co.,* 144 Ind. 549, 42 N. E. 483; affirmed in *Adams Express Co.* v. *Indiana,* 165 U. S. 255, 41 L. Ed. 70, 17 Sup. Ct. Rep. 991 [see, also, Rose's U. S. Notes].)

By section 6 of Chapter 49 the state board is required, in assessing the property which it is required to assess, to consider and treat and to ascertain and determine the value of all of the property wherever situated, whether partly within and partly without the state or whether wholly within the state, as one unit or system, for such section says that the value for taxation of the property and plant shall be that portion of the total value of the entire property and plant wherever situated that the total mileage within the state bears to the total mileage wherever situated, after deducting from such portion the total assessed value of all property which has been assessed by the county assessors, and the state board. shall assess the same accordingly. It is obvious that the state board of equalization cannot ascertain or determine the value of property which it is required to assess unless it first ascertains and determines the value of the entire property and plant wherever situated. (*State* v. *Western Union Tel. Co.,* 96 Minn. 13, 104 N. W. 567; *State* v. *Jones,* 51 Ohio St. 492, 37 N. E. 945; *Sanford* v. *Poe,* 69 Fed. 546, 16 C. C. A. 305; *State* v. *Adams Express Co.,* 144 Ind. 549, 42 N. E. 483; *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. Rep. 604 [see, also, Rose's U. S. Notes] ; *Wells Fargo & Co.'s Express Co.* v. *Crawford Co.,* 63 Ark. 576, 37 L. R. A. 371, 40 S. W. 710; *Detroit Citizens' St. Ry. Co.* v. *Common Council,* 125 Mich. 673, 84 Am. St. Rep. 589, 85 N. W. 96, 86 N. W. 809; *Western Union Tel. Co.* v. *Taggart,* 163 U. S.

1.; *Cleveland, C. C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 439, 38 L. Ed. 1041, 14 Sup. Ct. Rep. 1122; *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 421, 38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114; *Western Union Tel. Co.* v. *Missouri,* 190 U. S. 412, 421, 47 L. Ed. 1116, 23 Sup. Ct. Rep. 730; *Adams Express Co.* v. *Kentucky,* 166 U. S. 171, 41 L. Ed. 960, 17 Sup. Ct. Rep. 527; *State Railway Tax Cases,* 92 U. S. 575, 23 L. Ed. 663; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150, 41 L. Ed. 953, 17 Sup. Ct. Rep. 532; *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18, 35 L. Ed. 613, 11 Sup. Ct. Rep. 876 [see, also, Rose's U. S. Notes]; *Atchison, T. & S. F. R. Co.* v. *Sullivan,* 173 Fed. 456, 464, 97 C. C. A. 1; *State* v. *Savage,* 65 Neb. 714, 91 N. W. 716; *People* v. *Barker,* 48 N. Y. 70, 77.)

Intangible property: Before the state board of equalization the representatives of the four corporations, whose property is here involved, contended very strenuously that if the board should proceed in the manner and mode specified in section 6 of Chapter 49, the result would be the taxation of intangible property, and that intangible property could not be taxed, and as that contention was approved and sustained by the state board, the respondents herein, doubtless, will also adopt that contention in this proceeding.

Examining the provisions of said section 6, Chapter 49, it is very apparent that the Act does not attempt to assess and tax intangible property as a property entirely separate and distinct from the tangible property of an electric power or transmission line, but to assess and tax the tangible property at the enhanced value which it has by reason of the existence of the intangible property. In other words, all of the properties being combined into one system, or, as it is sometimes termed, one money-earning organization or profit-producing system, the value of the property as an entirety is increased over the value of each separate part of the system when valued separately and not in connection with the other parts of the system, and it is the value of the tangible property as so increased by this combination and unity of use and operation that is sought to be reached and taxed.

(See *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194,
41 L. Ed. 683, 17 Sup. Ct. Rep. 305; rehearing, 166 U. S. 185, 41
L. Ed. 965, 17 Sup. Ct. Rep. 604 [see, also, Rose's U. S. Notes];
*State ex rel.* v. *Jones, supra; Ridpath* v. *Spokane County,* 23
Wash. 436, 63 Pac. 261; *Town of Washburn* v. *Washburn Water-
works Co.,* 120 Wis. 575, 98 N. W. 539; *Chicago & N. W. Ry.
Co.* v. *State,* 128 Wis. 553, 108 N. W. 557; *State* v. *Savage,* 65
Neb. 714, 91 N. W. 716.)   We also desire to call the court's at-
tention to the authorities under the last preceding heading,
many of which bear indirectly on this question.

The following cases review, to a considerable extent, the dif-
ferent methods which should be used and the different elements
which should be considered by a taxing board or officer in de-
termining the value of property as a unit or system: *Oregon
& C. R. Co.* v. *Jackson County,* 38 Or. 589, 64 Pac. 307, 312,
65 Pac. 369; *Hager* v. *American Surety Co.,* 121 Ky. 791, 90
S. W. 550; *Atchison, T. & S. F. R. Co.* v. *Sullivan,* 173 Fed.
456; *State Board of Equalization* v. *People,* 191 Ill. 528, 58
L. R. A. 513, 61 N. E. 339; *State* v. *Savage,* 65 Neb. 714, 91
N. W. 716; *Morgan's L. & T. R. etc. Co.* v. *Board of Reviewers,*
41 La. Ann. 1156, 3 South. 507.

*Mr. John G. Brown,* for Respondents, submitted a brief and
argued the cause orally.

These respondents deny that the complaint is sufficient in its
allegations with reference to fraud.   The citation of authority
upon the first point involved, to-wit, that the acts constituting
the fraud must be specifically alleged and set forth, and that
words such as "wrongfully" or "fraudulently" which are mere
conclusions, are insufficient to charge fraud, are, of course, super-
lative.   It is also true that our motion to quash does not admit
the allegations of fraud as sufficient, upon a theory that de-
murrer admits the truth of fact pleaded, for the reason that a
motion to quash,—in effect a demurrer,—does not admit allega-
tions which are in themselves insufficient, and which are mere
conclusions.   (*Fogg* v. *Blair,* 139 U. S. 118, 127, 35 L. Ed. 104,

11 Sup. Ct. Rep. 476; *United States* v. *Ames,* 99 U. S. 35, 25 L. Ed. 295; *Pullman's Palace Car Co.* v. *Missouri Pac. Ry. Co.,* 115 U. S. 587, 29 L. Ed. 499, 6 Sup. Ct. Rep. 194; *Dillon* v. *Barnard,* 21 Wall. (U. S.) 430, 22 L. Ed. 673 [see, also, Rose's U. S. Notes]; *Meyendorf* v. *Frohner,* 3 Mont. 282; 21 R. C. L., sec. 70, p. 507, note 10.)

We contend, therefore, that the mere allegation of "wrongfully" acting is insufficient, also that the mere discrepancy in figures reached by the board, as against those asserted by the relator, is an insufficient allegation upon which this court can solemnly declare that these respondents acted fraudulently or wrongfully. We were orally advised by Assistant Attorney General Woody, and we believe the Attorney General himself will take the same view, that there is no attempt to charge corrupt, fraudulent action, only that fraud is to be presumed or will necessarily follow from the alleged discrepancy in the figures. The only possible theory upon which the allegations of the complaint in this particular can be held good is upon the theory that there is such a discrepancy between the figures alleged and the figures fixed by the respondent board as to in effect amount to no assessment, and be, therefore, a fraud upon the state. This, we assert, is not true, because there was an actual assessment, and even though a difference may exist between that asserted by the relator and that found by the respondents, it is not such as to shock the conscience and in effect be no assessment. (*Pittsburgh etc. Ry. Co.* v. *Backus,* 154 U. S. 421–435, 38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114; affirmed in *Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1–30, 41 L. Ed. 49, 16 Sup. Ct. Rep. 1054; also affirmed in *Maish* v. *Arizona,* 164 U. S. 599, 41 L. Ed. 567, 17 Sup. Ct. Rep. 193; *State of Missouri* v. *Dockery,* 191 U. S. 165, 63 L. R. A. 571, 48 L. Ed. 133, 24 Sup. Ct. Rep. 53 [see, also, Rose's U. S. Notes]; *Dillon* v. *Bare,* 60 W. Va. 483, 56 S. E. 390; *St. Louis Bridge & T. R. Co.* v. *People,* 127 Ill. 627, 21 N. E. 348; *Fogg* v. *Blair,* 139 U. S. 127, 35 L. Ed. 104, 11 Sup. Ct. Rep. 476 [see, also, Rose's U. S. Notes]; *State* v. *Savage,* 65 Neb. 714, 91 N. W. 716, 717.)

The petition is insufficient in that it does not allege that equalization has not been had. It certainly cannot be successfully contended that the state board of equalization has any original jurisdiction for assessment purposes, except such as is specifically conferred upon it by law. (Cooley on Taxation, 776, 777; *People* v. *Lothrop,* 3 Colo. 428; *State* v. *Cunningham,* 153 Mo. 642, 55 S. W. 249; *Lyman* v. *Howe,* 64 Ark. 436, 42 S. W. 830; *Sullivan* v. *Bitter,* 51 Tex. Civ. 604, 113 S. W. 193; *Powder River Cattle Co.* v. *Board of Commrs.,* 45 Fed. 323; *State* v. *Crookston Lum. Co.,* 85 Minn. 405, 89 N. W. 173; *Parkinson* v. *Jasper County Tel. Co.,* 31 Ind. App. 135, 67 N. E. 471; *Grant* v. *Bartholomew,* 57 Neb. 673, 78 N. W. 314.)

Unquestionably this respondent board acted in good faith, and, where that is admitted, *mandamus* will not lie and compel a new assessment. (*Southern Pac. Co.* v. *Commonwealth,* 134 Ky. 410, 120 S. W. 309; *Knight* v. *Thomas,* 93 Me. 494, 45 Atl. 499; *Sears* v. *Assessors,* 208 Mass. 208, 94 N. E. 467; *State* v. *Savage,* 65 Neb. 714, 91 N. W. 716–729; *State* v. *State Board of Equalization etc.,* 81 Neb. 139, 115 N. W. 789; *Manchester* v. *Furnald,* 71 N. H. 153, 51 Atl. 657; *People* v. *Keeffe,* 119 App. Div. 713, 104 N. Y. Supp. 154, 190 N. Y. 555, 83 N. E. 1130; *State* v. *Crites,* 48 Ohio St. 460, 28 N. E. 178; *Bedford Borough School Directors* v. *Anderson,* 45 Pa. St. 388; *Gibbs* v. *Hampden County Commrs.,* 19 Pick. (Mass.) 298.)

Failure of proper parties: Under the law, there is no question but what, in the series of co-operative acts which go to finally make an assessment of property, the county assessor of the particular county in which property is located is not only the initial acting officer, but an essential acting officer to the arriving at the value and having the same entered upon proper record. As to a large portion of this property, these respondents are only charged with the duty of equalizing assessments made by assessors, and under the provisions of Chapter 48 of the Laws of the Sixteenth Legislative Assembly, clearly a large portion of the property which is the subject of this action has to be first assessed by the local assessing officers, to-wit, the

county officers or county boards of equalization, in the county wherein the property may be found, a fact alleged in relator's petition. This being true, a writ of mandate directed to these respondents, who have not that essential initiative power under the law, would be practically nugatory, and before the result sought to be obtained by the relator could be obtained, it would be, and is, necessary that the various officers of the state charged with the duty of assessing property and fixing the value thereof for taxation purposes shall be joined in this proceeding, and shall likewise be subject to the mandatory directions of a court.

Clearly, where the law divides the performance of a certain duty among several officers, each to perform but one act in the series, but all to co-operate in the attainment of the single result, to-wit, proper valuation of property for taxation purposes, all should be joined as respondents in the proceeding to complete the performance of the duty of fixing the valuation or making the assessment. This is particularly forceful where the several officers are all concerned, and initiative action by one is essential to subsequent action by the other, and all are co-operative. (*Labette County Commrs. v. United States,* 112 U. S. 217, 28 L. Ed. 698, 5 Sup. Ct. Rep. 108 [see, also, Rose's U. S. Notes]; *McKie* v. *Rose,* 140 Fed. 145, 149; *People* v. *Getzendaner,* 137 Ill. 234, 34 N. E. 297–304; *State* v. *Harbison,* 64 Kan. 295, 67 Pac. 844; *Guthrie* v. *Sparks,* 131 Fed. 443, 65 C. C. A. 427; *Hicks* v. *Cleveland,* 106 Fed. 459, 45 C. C. A. 429; 26 Cyc. 410; *Peck* v. *Los Angeles County,* 90 Cal. 384, 27 Pac. 301; *Taylor* v. *McPheters,* 111 Mass. 351; *Berube* v. *Wheeler,* 128 Mich. 32, 87 N. W. 50, 51; *Dill* v. *Wheeler,* 100 App. Div. 155, 91 N. Y. Supp. 686; *Gaal* v. *Townsend,* 77 Tex. 464, 14 S. W. 365.)

Consideration of these laws in light of section 6 of Article V, state Constitution: Section 26 of Article V forbids class legislation. It is our contention that the word "class" as applied to this case, in the light of the other constitutional provisions in Article XII of the Constitution, relative to uniformity of taxation, has to do with asserting one class of property against the other, rather than one class of business. It is a well-known fact

that a great many industries, in addition to those who happen to have a continuous line in different counties in this state, have capitalization and stocks and bonds, which, if totaled, exceed the physical assets of the company. It is also equally true of a number of businesses and industries which operate entirely within one county. Now, the Constitution, upon the question of taxation, contemplates that all property shall be assessed uniformly, and that there shall be a uniform system of both assessment and taxation. Therefore, if a statute should attempt to single out a business simply because it is a class of business, rather than making it apply to all businesses which capitalize and borrow money on the expectancy of the success of the business, it does violence to the provisions forbidding class legislation.

"The weight of authority is in favor of the new opinion that the unconstitutionality of a statute imposing a duty may be set up by a ministerial officer as a defense to *mandamus* to compel the performance of the duty, on the ground that an unconstitutional statute is no law and binds no one to observe it. (22 R. C. L. 467, 468.)"

*Messrs. W. B. Rodgers, D. M. Kelly* and *Henry C. Smith, Amici Curiae,* submitted a brief, and one in reply to that of Relator, and argued the cause orally.

The method provided by section 6 of Chapter 49, Laws of 1919, is violative of the Fourteenth Amendment to the Constitution of the United States, prohibiting the taxing of property without due process of law. The method adopted in this section of arriving at the value of the property sought to be assessed within the limits of the state of Montana bears no necessary relation whatever to the true cash value of such property, and it is clearly apparent that in the total sum of the assessment ultimately levied upon the property situated within the state of Montana is included necessarily the value of property situated and located without the state of Montana, beyond its jurisdiction, and which may not be reached by any of our legislation touching the same. Such an assessment is

clearly inhibited by the last-named provision of the Constitution of the United States, as was, we think, clearly decided by the supreme court of the United States in *Union Tank Line* v. *Wright,* 249 U. S. 275, 63 L. Ed. 330.

The method of assessment provided for in section 6 is violative of the principles of uniformity of the mode of assessing all property within the state of Montana laid down by sections 1 and 16, Article XII, of our Constitution, and lacks uniformity, with the method prescribed by our laws for the assessment of all other classes of property within the state. (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477.)

The Constitution of the state of Montana prohibits the legislature from vesting in the state board of equalization and the state board of equalization from exercising the power to assess originally, either, any or all of the properties mentioned in said Chapter 49, and likewise in that portion of section 5 of Chapter 48 relating to electric power and transmission lines, telegraph and telephone lines, ditches, canals and flumes and other similar property.

In addition to the section of the Constitution already set out herein, it is necessary, in the consideration of this proposition to invite the court's attention to section 15 of Article XII, and likewise to section 15, as amended.

Prior to the amendment of section 15 no such power as that now sought to be vested in the state board of equalization could be conferred upon such board by the legislature. This is made clear in *State ex rel. Wallace* v. *State Board of Equalization,* 18 Mont. 473, 46 Pac. 266, and likewise in *State ex rel. State Board of Equalization* v. *Fortune,* 24 Mont. 154, 155, 60 Pac. 1086. In *State ex rel.* v. *State Board of Equalization,* 18 Mont. 473, 46 Pac. 266, the question was presented as to whether the state board of equalization had the power to increase the valuation of property returned to it by the assessors and county boards of equalization of the several counties, so as to increase or decrease the total valuation of property of the state as fixed by the county boards of assessors. Following the case of *People*

*ex rel. Crawford* v. *Lothrop,* 3 Colo. 428, interpreting a like provision in the Constitution of the state of Colorado, and adopting *in toto* the reasoning of that case as the true rule, the court denied such power to the state board of equalization.

Laying aside altogether the authoritative decision above mentioned, and it is nevertheless clearly demonstrable that the Constitution prohibits the assessment of property other than that enumerated in section 12 by the state board of equalization, and that all property is assessable only in the local jurisdiction where situated, or by some other agency than the state board of equalization.

At the time the Constitution was adopted, all property such as that enumerated in Chapter 49 was assessable locally, and all other property was assessable in the counties wherein the same was located, save and except the railroads of the state. It was the purpose of the constitutional convention to continue this method of assessment, as is made clearly apparent by the establishment of the county boards of equalization to equalize the assessable value of all property in the several counties, by the creation of the county assessor as a constitutional officer, and by the special enumeration in section 12 of railroad property as being assessable by the state board of equalization.

The rule *"expressio unius est exclusio alterius"* applies with special force. In general, all constitutional provisions are construed pursuant to the same rules as statutory provisions, with the additional provisions that in the state of Montana the provisions of the Constitution are both mandatory and prohibitory, unless otherwise expressed. (*Murray* v. *Heinze,* 17 Mont. 353, 365, 42 Pac. 1057, 43 Pac. 714; *In re McFarland's Estate,* 10 Mont. 445, 448, 26 Pac. 185; *State ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 44, 77 Pac. 299.)

Even though Chapter 49, and section 6 thereof, should be held to be constitutional, as the same is written, it furnishes no basis or justification for the plan and method of assessment which this court is asked to compel the state board of equalization and the county assessors of the state to adopt, and such a

method is clearly illegal, void, unconstitutional, inoperative and violative of the uniformity clause relating to assessments of section 1 of Article XII of the Constitution of the state, as the same is interpreted and declared in the case of *Hilger* v. *Moore, supra,* and other cases in the state of Montana.

It is well settled that a law, valid upon its face, may be administered or sought to be operated in an illegal and unconstitutional manner, and such an administration of the law will be illegal, unconstitutional, and may even be enjoined. (*Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 390, 38 L. Ed. 1014, 14 Sup. Ct. Rep. 1047 [see, also, Rose's U. S. Notes].)

It is manifest that according to the allegations of the petition, the discrepancy between what is claimed in the petition to be the true value of this property arises not from any failure of the assessors or the board of equalization to assess the same at its actual cash value, as separate entities of physical property, but solely on account of the alleged failure to levy an assessment upon the business, the use of said properties and the goodwill of the companies operating the same, using the standards set out in the petition as *criteria* by means of which said values might be arrived at.

It is likewise manifest that this method is entirely different from the methods employed in arriving at the value of all the properties of all the other residents of the state, whether corporate or individual, and that under such a method an entirely different result would be arrived at as to the assessable value of the properties of these companies from that which would be arrived at in the assessable values of like properties of individuals and corporations having property situated in either one or more of the counties of the state, but not engaged in the telephone, electric light, hydro-electric or similar businesses.

Such a method would manifestly violate the uniformity clause of section 1 of Article XII of the Constitution, and result in the assessment for taxation of the goodwill of the business, which has been declared nontaxable in the state of Montana; and it is likewise manifestly a method which cannot be made justly

and equitably operative by either the county assessors or the state board of equalization.  (*Wells Fargo & Co.* v. *Johnson,* 214 Fed. 180, L. R. A. 1916C, 522, 130 C. C. A. 528; *Standard Oil Co.* v. *Howe,* 257 Fed. 481; *State* v. *Meek,* 127 Ark. 349, 192 S. W. 202, 203; *Chicago & N. W. Ry. Co.* v. *Boone County Suprs.,* 44 Ill. 240, 241; *Trenton & Mercer County Traction Co.* v. *State Board etc.,* 91 N. J. L. 511, 103 Atl. 413; *County of Santa Clara* v. *Southern Pac. Ry. Co.,* 18 Fed. 385, at p. 394, 9 Sawy. 165; *Dillon* v. *Bare,* 60 W. Va. 483, 56 S. E. 390, at pp. 393, 395, 396; *Taylor* v. *Louisville & N. R. R. Co.,* 88 Fed. 350, 31 C. C. A. 537.)

The petition fails to state facts sufficient to constitute a cause of action against the respondents, for the reason that it does not allege that the other properties situated within the several counties and within the state of Montana have been or are to be assessed at their true cash value, or that the assessment laid upon the properties of these companies in the various counties, and that laid upon the property of these companies by the state board of equalization, is below the assessment laid upon the other properties and taxpayers of the state. (*People's Gaslight & Coke Co.* v. *Stuckart,* 286 Ill. 164, 121 N. E. 629; *Randell* v. *City of Bridgeport,* 63 Conn. 321, 28 Atl. 523; *Ex parte Ft. Smith & V. B. Bridge Co.,* 62 Ark. 461, 36 S. W. 1060; *Chicago, B. & Q. Ry. Co.* v. *Board of Commrs.,* 54 Kan. 781, 39 Pac. 1039; *Chicago, B. & Q. Ry. Co.* v. *Board of Commrs. of Republic Co.,* 67 Fed. 411, 4 C. C. A. 456; *Taylor* v. *Louisville & N. R. Co.,* 88 Fed. 350, 31 C. C. A. 537.)

Property in one state cannot be taxed in another, and no state can tax property beyond its jurisdiction.   The taking into consideration of the value of a continuous line of railway as a unit and the distribution of such tax upon a mileage basis is subject to the general rule that such distribution of taxes on a mileage basis must result in an equitable distribution thereof, and must represent the actual value of the property in each local jurisdiction.   (*Fargo* v. *Hart,* 193 U. S. 490, 499, 48 L. Ed. 761, 24 Sup. Ct. Rep. 498; *Pittsburgh etc. Ry. Co.* v. *Backus,* 154 U. S.

421, 431, 38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114; *Western Union Tel. Co.* v. *Taggart*, 163 U. S. 1, 41 L. Ed. 49, 16 Sup. Ct. Rep. 1054 [see, also, Rose's U. S. Notes].)

In order to charge the state board of equalization with any dereliction of duty in the assessment of these properties on any particular basis, it is necessary that the petition show that as a result of such assessment there has been a discrimination as against the other taxpayers in this state; in fact, if it be true that the county assessors of the state in assessing all of the other property of this state assessed it on a forty per cent basis, not only would the state board be justified in assessing the property of these corporations on that basis, but the law would require it to do so. (*Sunday Lake Iron Co.* v. *Wakefield Tp.*, 247 U. S. 350, 352, 62 L. Ed. 1154, 38 Sup. Ct. Rep. 495; *Louisville & N. R. Co.* v. *Bosworth*, 209 Fed. 380.)

*Mr. M. S. Gunn, Amicus Curiae,* submitted a brief.

As I view this case, there are but two questions for consideration by the court, which may be stated as follows: 1. Was the state board of equalization authorized to make the assessment complained of? 2. If the state board had the power to assess, was it required to observe and follow the rule prescribed by section 6 of Chapter 49 of the Laws of Montana of 1919 in determining the values of the properties it assessed?

The first question involves a consideration of sections 1, 11 and 16 of Article XII of the Constitution of Montana. These sections authorize the legislative assembly to prescribe the manner of the assessment of all property, except railroad property, and only limit the power of the legislative assembly in this regard, by requiring that the manner prescribed shall secure a "just valuation," and result in uniform taxes upon the "same class of subjects within the territorial limits of the authority levying the tax." As the power of the legislative assembly over the subject of taxation is plenary, except as restricted by the Constitution, and the Constitution has not designated the officer or agency by which assessment shall be made, except in the case

of railroad property, it is clearly within the power of the legislative assembly to prescribe the agency by which an assessment of any property, except railroad property, shall be made.  (*Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093; *Ames* v. *People,* 26 Colo. 83, 56 Pac. 656.)

It is argued, in support of the contention that the Constitution prohibits the legislative assembly from conferring the power of assessment upon the state board of equalization, that to do so violates the uniformity provisions of the Constitution.  This court has recently decided, in the case of *Hilger* v. *Moore,* that the provisions of sections 1 and 11 of Article XII, relating to uniformity, must be construed *in pari materia,* and that when so construed, classification is permissible and the rule of uniformity applies to a class of property as distinguished from all property.  It is only necessary, then, to inquire whether the classification of property which the state board is authorized to assess is a reasonable classification.  We take it that no one will dispute the proposition that the properties mentioned in section 5 of Chapter 48 of the Laws of 1919 are of a character which justify their separate classification in order to secure a just valuation for the purpose of taxation.  As a matter of fact, the same reason prevails for having all of such properties assessed by the state board that moved the framers of the Constitution to provide for the taxation of railroad property by such board.  It is worthy of note that the uniformity provisions of the Constitution have reference to "the rate of assessment and taxation" and "taxes."  Where all property is required to be assessed at its full cash value, there cannot be any want of uniformity, required by the Constitution, even though some of the property is assessed by one agency and some by another.

It is further argued, against the power of the state board to assess, that the property owner is deprived of his constitutional right to have the assessment of his property reviewed by the county board of equalization.  Whatever right the property owner may have had prior to the amendment of section 15 of Article XII of the Constitution to have the assessment of his

property reviewed and finally determined by the county board does not now exist, as the state board is authorized to supervise and review the acts of county assessors and county boards of equalization and may value any property, without regard to the valuation thereof by the county assessor or county board. According to the amendment, the county board is subordinate to the state board in all its acts and decisions.

It is further argued, against the power of the legislative assembly to authorize the state board to assess, that the definition of the duties and powers contained in the Constitution prevents the imposition of any other duties, or the conferring of any other powers, by virtue of the application of the rule *expressio unius est exclusio alterius,* and the cases of *State ex rel. Wallace* v. *State Board,* 18 Mont. 473, 46 Pac. 266, and *State* v. *Fortune,* 24 Mont. 154, 155, 60 Pac. 1086, are cited. While we have never agreed with the decisions in these cases, they dealt with questions of equalization and not with the question of assessment. Furthermore, they are wholly inapplicable to section 15, as amended.

Admitting for the sake of argument that the maxim *expressio unius est exclusio alterius* may prevent enlarging the duties or powers of a public officer expressly defined in the Constitution, it cannot prevent the imposition of duties or the conferring of powers different from the duties and powers so defined. The citation of authorities on the proposition seems unnecessary.

In support of the proposition that the state board is without authority to assess any property, except railroad property, attention is called to the fact that in the amendment of section 15 of Article XII the provision of the original section that ''Each board shall also perform such other duties as may be prescribed by law'' is omitted. It is argued that this omission clearly evidences an intention that the duties imposed upon the state board by the amendment are exclusive and cannot be added to by the legislative assembly. This argument might have some force, except for the fact that the Constitution of a state operates as a limitation on the powers of the legislative assembly and not

as a grant.  As before stated, the power of the legislative as-
sembly over the subject of taxation is absolute, except as con-
trolled by the Constitution, and the legislative assembly has the
power to enlarge the duties and powers of the county boards
and the state board without any provision to that effect in the
Constitution.  (See *Ames* v. *People,* 26 Colo. 83, 56 Pac. 656.)

Assuming that the state board had the power to assess, we
proceed to a discussion of the jurisdiction or authority of this
court to review the action of the board in making the assessment
complained of.  It is a rule of law, universally recognized, that
a court cannot review the action of an assessing officer or board,
where jurisdiction to make the assessment existed, except to de-
termine whether the assessment was fraudulently made or was
the result of the application of some fundamentally erroneous
principle.  The law on this subject is well stated by Mr. Justice
Pitney, in the case of *Illinois Central R. Co.* v. *Greene,* 244 U. S.
555, 61 L. Ed. 1309, 37 Sup. Ct. Rep. 697.

As it is not claimed that the board acted fraudulently the court
is limited to the inquiry whether the assessment resulted from
the application of some erroneous principle.  The only conten-
tion in this regard, made in behalf of the state, is that the board
failed to observe and follow the rule prescribed in section 6 of
Chapter 49.  The rule prescribed by section 6 cannot by any
possible construction of the section have any application, except
to an interstate property.  There cannot be an apportionment
on a mileage basis, as required by the rule, unless a part of the
property is without the state.  In fact, the rule does not con-
template an assessment of an entire property, but only a por-
tion of an entire property situated partly within and partly
without the state.  The section is clearly unconstitutional, as
applied to an interstate property.  While the legislative assem-
bly might prescribe a rule requiring the assessing officer or board
to take into consideration the entire value of an interstate plant
or property in arriving at the value of that part of the plant
or property in the state, it cannot prescribe an iron-clad rule,
as it has attempted to do by section 6, by which the value of

the portion of the plant or property in the state shall be taken to be that part of the value of the entire property that the mileage in the state bears to the entire mileage. Such a rule operates to tax property beyond the jurisdiction of the state. (*Fargo* v. *Hart,* 193 U. S. 490, 48 L. Ed. 761, 24 Sup. Ct. Rep. 498; see, also, *Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1, 41 L. Ed. 49, 16 Sup. Ct. Rep. 1054; *Pittsburgh etc. R. Co.* v. *Backus,* 154 U. S. 421, 433, 38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114 [see, also, Rose's U. S. Notes].)

We do not feel that we can add anything to the briefs and arguments already presented, on the question of the constitutionality of section 6 as applied to property situated wholly within the state.

The only regulation prescribed for securing a just valuation of the properties mentioned in section 5 of Chapter 48 is the regulation or rule found in section 6 of Chapter 49. If the rule thus prescribed is invalid or does not apply to property wholly within the state, it, of course, follows that the state board is not required to observe and follow such rule, and as it is not contended that the state board was guilty of fraud, the motion to quash should be sustained.

### RELATOR'S BRIEF IN REPLY.

Counsel contends that Chapters 48 and 49 are class legislation. This contention is wholly unsound and counsel's argument in support thereof is without any merit whatever, and we may here observe that not a single decision is cited in support of his contention.

Chapter 48 singles out certain kinds and classes of property and requires that they be assessed by the state board of equalization. It does not single out the property of one corporation, or the property of corporations generally, but it enumerates several different kinds of property, whether the same be owned by individuals, associations or corporations, and requires that such property be assessed by the state board. Chapter 49 then provides the method or procedure to be followed by the state board for the purpose of ascertaining the value of this class of prop-

erty. The uniformity required by the Constitution is a uniformity of assessment and taxation to the end that all property shall pay its fair proportion of taxes, but this does not require a uniformity of methods or procedure, for the purpose of ascertaining and determining the value of all property of every class. All property is not the same; it differs in kind and characteristics, and one method for ascertaining value, when applied to one class of property, might result in ascertaining the value of that particular class of property, but when applied to property of an entirely different class and character, it would not result in ascertaining the value of that particular class. (*Fidelity Trust Co.* v. *Vogt*, 66 N. J. L. 86, 48 Atl. 580; *People ex rel.* v. *Henderson*, 12 Colo. 369, 21 Pac. 144; *Foster* v. *Hart Consol. Mining Co.*, 52 Colo. 459, 122 Pac. 48; Judson on Taxation, secs. 502, 503; 1 Cooley on Taxation, pp. 72–75; 37 Cyc. 746, 751; *Michigan Railroad Tax Cases*, 138 Fed. 223; affirmed in *Michigan Cent. Ry. Co.* v. *Power*, 201 U. S. 245, 50 L. Ed. 744, 26 Sup. Ct. Rep. 459 [see, also, Rose's U. S. Notes]; *Charleston & S. Bridge Co.* v. *Kanawha Co. Ct.*, 41 W. Va. 658, 24 S. E. 1002; *Chicago & N. W. Ry. Co.* v. *State*, 128 Wis. 553, 108 N. W. 557.)

ON MOTION TO QUASH.

Opinion—PER CURIAM.

This is an original application for *mandamus*, on the relation of the attorney general, to compel the state board of equalization to make certain assessments in accordance with the provisions of section 1, Chapter 48, and section 6, Chapter 49, Laws of the Sixteenth Legislative Assembly. The material facts alleged in the affidavit are:

That the Montana Power Company, Great Falls Power Company, Thompson Falls Power Company and Montana Reservoir and Irrigation Company are corporations organized and existing under the laws of Montana; that they are what is known as hydro-electric companies, and are engaged in the business, in this state, of generating electric power and energy, and in trans-

mitting, distributing and selling the same; that on the first Monday in March, 1919, each of said corporations was the owner of a large number of lots and parcels of real estate, buildings and structures thereon, dam sites, dams, power-houses, machinery and furniture, and also rights of way, buildings situated thereon, pole and transmission lines, and other property, all situated in the state of Montana, and subject to taxation therein for the year 1919; that the power and transmission lines of each of said corporations on said day constituted a single and continuous property operated in more than one county in this state; that some time prior to the first Monday in March, 1919, the officers and agents of each of said corporations returned to and filed with the county assessor of each county in which a part of its property was operated a statement in compliance with the requirements of section 2511, Revised Codes, which rightfully included all lots and parcels of real estate, and other property not included in its right of way, assessable by the assessor of such county, and wrongfully included rights of way, pole and transmission lines, distributing systems, and other similar property, assessable by the state board of equalization; that in such statement each item of property was listed separately, and a fixed value placed thereon by the officers and agents of the corporation; that the assessor of each county accepted the valuations so placed on such items of property, and assessed the same accordingly; that in making the assessment the value of each item was arrived at by the assessor by taking the original cost of construction and deducting therefrom the depreciation, which resulted in an assessment at only forty per cent of the full cash value; that the property of each of said corporations is joined together so as to form a single, continuous and entire property and plant, by reason of which an intangible value has been created, and now exists, giving the property, as a whole, a value greatly in excess of the aggregate of the values of the separate items of property forming parts thereof; that the fact that all of the items of property, taken together, constituted a single and continuous property was not considered in making the as-

sessment, and that the franchises, privileges and contracts, net earnings, value of capital stock and outstanding bonds, of each corporation, were also not taken into consideration; that the state board of equalization met in regular session on the fourth Monday in July, 1919, and thereafter took up the matter of the assessment of the property of said corporations; that the board refused to change or correct the assessments made by the assessors by striking therefrom the assessments of rights of way, pole and transmission lines, distributing systems and other similar property, and failed, neglected and refused to assess the same as a state board of equalization, and permitted the assessments made by the county assessors to stand without change; that the board at said meeting ascertained that certain other rights of way, pole and transmission lines, telegraph lines and similar property had not been assessed by the respective county assessors, and thereupon proceeded to assess the same for taxation at less than their full cash value; that the board failed to increase the assessments made by the county assessors to make them represent the full cash values of the properties assessed; and that the values for assessment and taxation of the properties of said four corporations were so inadequate and disproportionate, and so far below the full cash value thereof, as to show a gross abuse of discretion, and failure to exercise sound judgment, and for that reason were fraudulently made and do not constitute a lawful assessment.

The case is before us on a motion to quash the alternative writ of mandate issued herein, and to dismiss this proceeding, filed by respondents, which raises the questions as to the constitutionality of that part of section 1, Chapter 48, which vests in the state board of equalization the power to make an original assessment of the rights of way, pole and transmission lines, distributing systems, and similar property, of said corporations, and the constitutionality of so much of section 6, Chapter 49, as requires said board to value such property for taxation on a proportionate mileage basis.

Section 1, Chapter 48, in so far as it is material here, confers upon the state board of equalization the power and duty "to annually assess the franchises, roadway, roadbed, rail and rolling stock and all other property of all railroads, and the pole lines and rights of way and all other property of all telegraph and telephone lines, electric power and transmission lines, ditches, canals and flumes, and other similar properties, constituting a single and continuous property operated in more than one county in the state, and to apportion such assessments to the counties in which such properties are located on a mileage basis, provided, however, that lots and parcels of real estate, not included in rights of way, with the buildings, structures, and improvements thereon, dams and power-houses, depots, stations, shops and other buildings erected upon right of way, furniture, machinery and other personal property shall not be considered as a part of any such single and continuous property, but shall be considered as separate and distinct therefrom and shall be assessed by the county assessor of the county wherein they are situate"; and section 6, Chapter 49, in part provides:

"The value for taxation of the property and plant of each telegraph, telephone, electric power and transmission line, canal, ditch, flume, and other properties to be assessed by the state board of equalization, shall be that portion of the total value of the entire plant and property wherever situated that the total mileage within this state bears to the total mileage wherever situated, after deducting from such portion the total assessed value of all property which has been assessed for taxation in this state by the county assessors of the several counties of this state, and the state board of equalization shall assess the same accordingly."

The provision of section 16, Article XII, of the Constitution, [1] that "all property shall be assessed in the manner prescribed by law, except as is otherwise provided in this Constitution," is clear and explicit in vesting in the legislature plenary power in matters of assessment, including the power to designate

the agency through which the assessment shall be made.  Speaking with reference to this provision, in the case of *Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093, this court said: ''We might be somewhat confused as to the meaning of the phrase 'in the manner prescribed by law,' except for the interpretation placed thereon by the same section.  By the first sentence of this section the legislature is left free to prescribe the manner in which property shall be assessed, except so far as the Constitution has prescribed such manner.  And what is the exception?  That 'the franchise, roadway, roadbed, rails and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization.'  The manner, then, includes the agency which shall make the assessment; for the above excepting clause has no reference to the last portion of the section, which only refers to the division or apportionment of the assessment after the same is made, and can only refer to the agency employed, which in that clause is the state board of equalization.''  In that case the court had under consideration the constitutionality of a statute which provided for the appointment, in certain counties, of boards of appraisers whose duty it was to fix the valuation of real estate for the purpose of assessment by the county assessor; and what is there said is applicable here, unless by some other provision of the Constitution the authority of the legislature to confer upon the state board of equalization the power to make an original assessment of property, other than railroad property, is denied.

It is argued by counsel for respondents that the authority conferred upon the state board of equalization to assess the [2-4] property of railroads excludes all other powers of original assessment, because the provisions of the Constitution are mandatory and prohibitory (sec. 29, Art. III); that the maxim *expressio unius est exclusio alterius* applies; and that the omission from section 15, Article XII, of the Constitution as amended in 1916, which defines the duties of the state and county boards of equalization, of the provision which was a part

of said section before it was amended, that the boards shall "also perform such other duties as may be prescribed by law," evinces a clear intention to restrict the duties of the state board of equalization to those specified in the section itself, with the exception only of the assessment of the property of railroads. Such an omission would have great force if we were considering its effect in connection with a statute amended by the legislature. However, the Constitution is not a grant, but a limitation, of the powers of the legislature. This fundamental distinction between the Constitution of a state and the Constitution of the United States has frequently been stated by this court. In the case of *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078, it was said: "A state legislature is not acting under enumerated or granted powers, but rather under inherent powers restricted only by the provisions of the sovereign Constitution"; and in the case of *Missouri River Power Co.* v. *Steele,* above, this court said: "In the matter of legislation, the people, through the legislature, have plenary power, except in so far as inhibited by the Constitution, and the person who denies the authority in any given instance must be able to point out distinctly the particular provision of the Constitution which limits or prohibits the power exercised." (See, also, *Hilger* v. *Moore, ante,* p. 146, 182 Pac. 477, and *In re Pomeroy,* 51 Mont. 119, 151 Pac. 333.)

In determining, therefore, the effect of this omission from section 15, it is to be borne in mind that the inquiry is not whether the power for a particular enactment is to be found in express terms in the Constitution, but whether there is anything in that instrument which forbids the legislation. Viewed in this light, we do not find in the omission of the sentence above quoted any inhibition of the exercise by the legislature of the power under consideration.

The authority contained in the first sentence of section 16 is also not in any wise abridged by the remainder of the section, which empowers the board to assess railroad property. The [5] provisions of that section are mandatory and prohibitory,

in the sense that the legislature cannot take from the state board of equalization the power to assess railroad property, nor vest such power elsewhere.

The maxim *expressio unius est exclusio alterius,* invoked by [6]  respondents, is a rule of interpretation, and not a constitutional command, and cannot be made to serve as a means to restrict the plenary power of the legislature, nor to control an express provision of the Constitution.

It is also contended that the Act in question is invalid because it denies to the taxpayer the right to have his property [7]  assessed by the local assessing officer, as well as the right to have the valuation put thereon reviewed by the county board of equalization. This contention cannot be sustained. It is not a right of the taxpayer to have his assessment made, in the first instance, by any particular officer, or to have it equalized by any particular board. (*Missouri River Power Co.* v. *Steele,* above; *Ames* v. *People,* 26 Colo. 83, 56 Pac. 656.) So long as the principles of uniformity and just valuation are observed, his rights are not invaded.

As the power of the legislature in all matters of taxation is plenary, except where expressly restricted by the Constitution, and the Constitution has not designated the officer or agency by which assessments shall be made, except in the case of railroad property, we conclude that the legislature had the authority to confer upon the state board of equalization the power of assessment prescribed in section 1, Chapter 48, above.

The respondents cite the case of *Northern Pac. Ry. Co.* v. *Brogan,* 52 Mont. 461, 158 Pac. 820, as being in point here. In that case, this court considered the extent of the power conferred by the constitutional provision authorizing the state board of equalization to assess the property of railroads, and held that a telegraph line extending along the right of way of a railroad was not assessable by the state board of equalization as a part of the roadway; but the power of the legislature to prescribe the manner of assessment of property was not there involved.

It is also earnestly contended by the respondents that the portion of section 6, Chapter 49, above quoted, establishes an **[8–10]** arbitrary rule of assessment, in violation of the Fourteenth Amendment of the Constitution of the United States, prohibiting the taking of property without due process of law, and also violates the principle of uniformity established by the Constitution of Montana. It will be observed that the section does not by its terms attempt to control the discretion of the state board of equalization in determining values, but only prescribes that when the value of the entire property, wherever situated, has been ascertained, the value for taxation shall be that portion of the total value of the entire plant and property, wherever situated, that the total mileage within this state bears to the total mileage wherever situated, after deducting from such portion the total assessed value of the property which has been assessed by the county assessors. This Act does not repeal existing statutes on the subject of assessment, but is to be treated as a supplement thereto. The various sections of this Act, and of existing Acts, are, therefore, *in pari materia,* and are to be construed together. Thus section 2502, Revised Codes, which provides that "all taxable property must be assessed at its full cash value" is not in any wise affected by Chapters 48 and 49, and is to be considered in connection with them. These provisions are also to be read in the light of the constitutional requirement that there shall be a uniform rate of assessment and taxation, and a just valuation for taxation of all property. (Sec. 1, Art. XII.)

In construing a statute we are not permitted to give it such an interpretation as will make it a nullity unless it is clear that such a construction is necessary, but every reasonable doubt is to be resolved in favor of its validity. (*State ex rel. Hay* v. *Alderson,* 49 Mont. 387, 403, Ann. Cas. 1916B, 39, 142 Pac. 210.)

A statute similar in its terms to section 6, Chapter 49, except that it provided that the taxing board should take into consideration the value of the capital stock of the corporation to be taxed in ascertaining the value of its property, was considered

by the supreme court of Indiana, in the case of *Western Union Tel. Co.* v. *Taggart,* 141 Ind. 281, 285, 60 L. R. A. 671, 40 N. E. 1051, and the court said with reference to it: "It is to be remembered that the law under consideration (Acts 1893, p. 374; Rev. Stats. 1894, sec. 8478, and following), for the assessment and taxation of telegraph and other like companies, is supplementary to and amendatory of the general Act for taxation (Acts 1891, p. 199; Rev. Stats. 1894, sec. 8408, and following); and also that the duties and powers of the state board of tax commissioners and other assessing and taxing officers of the state are defined and prescribed solely in said general tax law of 1891. The two Acts are therefore to be treated not only as *in pari materia,* but as in fact but different parts of one and the same law of taxation; and hence all the sections of the Act under consideration are to be so construed, if possible, as to harmonize the same with the provisions of the general law." And again, in the same case, the court said: "The Act, it is true, provides a method of valuation—the mileage method—as a basis for the taxation of certain property within the state of Indiana. But this is simply a means for determining the true cash value of the property within the state and if in the case of appellant's property, or in any other case, it is shown to the board, or is discovered by them that still further deductions should be made, on account of larger proportional values outside of the state, or for any other reason, then the board must make such deductions, so that finally, only the property within the state of Indiana shall be assessed, and that at its true cash value." The language last quoted was directed to the contention there made, which is likewise made here, that the statute, if literally construed, would result in taxing property situated outside of the state, in instances where the property of a telegraph line situated outside the state was much greater in value, in proportion to the mileage there, than the value of the property in the state, in proportion to the mileage inside the state. This construction of the Indiana statute was approved by the supreme

court of the United States (*Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1, 41 L. Ed. 49, 16 Sup. Ct. Rep. 1054 [see, also, Rose's U. S. Notes]), and there the court said: "This court, at the last term, in several cases, affirming judgments of the supreme court of Indiana, held that the statute of 1891 did not, in the case of a railroad partly in that state and partly in another, require that the value of the part in Indiana should be determined absolutely by dividing the whole value upon a mileage basis; but only that the total amount of stock and indebtedness should be taken into consideration in ascertaining the value; and that the statute was constitutional."

In the case of *Cleveland etc. Ry. Co.* v. *Backus,* 154 U. S. 439, 38 L. Ed. 1041, 14 Sup. Ct. Rep. 1122 [see, also, Rose's U. S. Notes], the court used this pertinent language: "It is not to be assumed that a state contemplates the taxation of any property outside of its territorial limits, or that its statutes are intended to operate otherwise than upon persons and property within the state. It is not necessary that every section of a tax Act should in terms declare the scope of its territorial operation. Before any statute will be held to intend to tax outside property, the language expressing such intention must be clear."

We think the interpretation of the Indiana statute is sound in principle, and that a like construction is applicable here. As so construed, section 6, Chapter 49, does not establish an arbitrary rule of assessment, but only requires that the total value of the plant and property, wherever situated, shall be taken into consideration in determining the actual cash value for taxation of that portion of the plant and property situated within this state.

It is insisted by the attorney general that in order to arrive at the actual cash value of the property of each of the [11] corporations mentioned in this proceeding, the board was required to consider such property as a unit, with such added values as would result from the joining together of the separate items of property, and the operation of the whole as a single and continuous plant, and that in so doing, the board must ascer-

tain the value of the outstanding capital stock and bonds of each corporation, for the purpose of arriving at the value of its property for taxation, or must ascertain its actual net earnings, and from them compute the value of its property. In support of this contention, the attorney general cites numerous cases decided by the supreme court of the United States, which will be found collated in the recent decision of that court in the case of *Union Tank Line* v. *Wright,* 249 U. S. 275, 63 L. Ed. 330, in which the court has uniformly sustained valuations for taxation based upon the capitalization of income and stock and bond plans, and other similar methods, computed on the basis of the proportion of the mileage within the state to the total mileage of the property wherever situated. In each case in which the tax has been sustained, however, the court has determined that the statute under which the assessment was made only established a method of ascertaining values for the consideration of the taxing board, and did not lay down an absolute rule of assessment. In the case of *Fargo* v. *Hart,* 193 U. S. 490, 491, 48 L. Ed. 761, 24 Sup. Ct. Rep. 498 [see, also, Rose's U. S. Notes], the court denied the right of a state to adopt a method that would result in taxing property situated beyond its borders; and in the case of *Union Tank Line* v. *Wright,* above, the court condemned an assessment made by the state of Georgia of certain oil tank-cars, on the basis of the ratio of miles in that state over which the oil cars moved, to the total mileage traveled by the company's cars in all of the state, as arbitrary and violative of the Fourteenth Amendment of the federal Constitution, as well as imposing an undue burden upon interstate commerce. That case was decided upon the facts involved in the particular assessment, and, so far as general principles are concerned, the holding does not appear to overturn the previous decisions of that court, though the members of the court expressed diverse opinions on that subject.

It is one thing, however, to approve a method of assessment adopted by a taxing board in the exercise of its discretion, as was done in most of the cases referred to, and quite another thing,

different in principle, to compel a board by writ of mandate to adopt a particular plan in determining values for taxation. As we have previously pointed out, we find nothing in the statute which attempts to direct the state board of equalization as to the method to be pursued in arriving at the actual values of the property of the corporation, whether inside or outside of the state, and we may not lay down a rule to control their discretion in that respect. The board is an agency created by the Constitution with certain well-defined powers, discretionary in character. The writ of this court may be directed to the board to require them to look to the provisions of the enactment under consideration, as a method of making the assessment of the property of the corporations in question, and section 2502 above, requires them to assess the property at its full cash value; but in so far as the means to be adopted by them in arriving at values are concerned, we may not interfere. Those matters are within the discretion of the board, and so long as they are not guilty of fraud, and do not adopt a fundamentally wrong principle of assessment, we cannot interpose, or substitute our judgment for theirs.

In the case of *Illinois Central Ry. Co.* v. *Greene,* 244 U. S. 555, 61 L. Ed. 1309, 37 Sup. Ct. Rep. 697, in discussing the powers of a similar board, the court said: ''The district court properly held that the action of the board must be sustained unless it was made to appear that they had adopted a fundamentally wrong principle, or had been guilty of fraud. It is held further, that no fundamentally wrong principle was involved in determining whether such a railroad system should be valued on the capitalization of income or on the stock and bond plan; or, if the former, what rate of interest should be used in capitalizing, or how many years' earnings should be considered, or what was in fact the amount of net income for a given year; or, if the stock and bond plan was adopted, what was the value of the stock and bonds; and that on these and similar matters the action of the board, in the absence of fraud, was binding upon the court. In this we concur.''

In the case of *Pittsburgh etc. Ry. Co.* v. *Backus,* 154 U. S. 421, 38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114, it was also said: ''Whenever a question of fact is thus submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact, and if such determination comes into inquiry before the courts it cannot be overthrown by evidence going only to show that the fact was otherwise than as so found and determined. Here the question determined by the state board was the value of certain property. That determination cannot be overthrown by the testimony of two or three witnesses that the valuation was other than that fixed by the board.''

Speaking on this same subject in the case of *Danforth* v. *Livingston,* 23 Mont. 558, 563, 59 Pac. 916, this court said: ''The value of property is a matter of opinion, and there must necessarily be left a wide room for the exercise of this opinion. Absolute accuracy cannot always be attained. Courts cannot be called upon, in every instance, to settle differences of opinion in this regard between the assessing officer and the property owner. Otherwise, courts could be converted into assessing boards, and, in assuming to act as such, would usurp the powers lodged elsewhere by the law-making branch of the government.''

The allegation of fraud in the affidavit amounts to nothing more than the statement, in a different form, that the board wrongfully ignored the provisions of the statute in question, and both made and adopted valuations which were less than the full cash value of the properties assessed, and need not be further noticed. The only allegations, therefore, which require consideration are the allegation that the board failed to make an original assessment of the property belonging to said corporations as required by section 1, Chapter 48, and section 6, Chapter 49, above, and the further allegation that they failed to correct the assessments made by the county assessors so as to make them represent full cash values. Assuming these allegations to be true, as we must for the purposes of the motion to quash, it is apparent that the board did not perform the duties cast upon them in these respects.

The motion to quash the alternative writ, and to dismiss this proceeding, is therefore overruled, and the respondents may answer within ten days, if they so elect. Otherwise, a peremptory writ of mandate will issue.

---

## ON THE MERITS.

### (No. 4,478.)

#### (Submitted January 2, 1920. Decided January 12, 1920.)

##### [186 Pac. 697.]

Taxation — State Board of Equalization—*Mandamus*—Evidence — Inadmissibility.

1. Where the point at issue on application for writ of mandate to compel the state board of equalization to reassess the properties of several electric power corporations, was whether such properties should be regarded by it as one plant, evidence, in the form of annual reports made to the public service commission, offered by the state for the purpose of showing that the corporation had treated their properties as one plant, the cost of each plant, the amount of the capital stock of each, *etc.*, *held* inadmissible, the questions of the value of the properties, or how any one of the corporations considered its property being immaterial to a determination of the cause.

*Mandamus*—Nature of Writ.

2. The writ of mandate is not a writ to correct errors but to compel action.

Taxation—State Board of Equalization—Discretion—*Mandamus*.

3. *Held*, under the above rule, that where the state board of equalization, sitting for the purpose of reviewing, adjusting and equalizing assessments under the provisions of subdivision 7, section 1, Chapter 48, Laws of 1919, has exercised its judgment and discretion, and in the absence of statutory direction how it shall proceed, or of fraud, bad faith or flagrant abuse of discretion, the supreme court cannot by *mandamus* compel the board to proceed in any particular manner or to reverse its decision, even though the result reached may be clearly unjust and erroneous.

Same—Fraud—Presumption—Duty of Courts.

4. Fraud in taxing officials cannot be presumed, nor can courts inquire as to the operation of their minds in fixing values.

Same — Valuation of Property — Review — Assessing Officers — Duties and Accountability.

5. The determination of the value of property for the purpose of assessment lies within the sound judgment of the assessing officers, subject to review only by the county and state boards of equalization, and accountable only to the electors for the manner in which they exercise that judgment.

Same—Electric Power Lines—State Board of Equalization—Duties—Statutes—Interpretation.

6. *Held,* that in enacting section 1, Chapter 48, Laws of 1919, the legislature intende'd that the state board of equalization should assess all electric power and transmission lines constituting a single and continuous property operated in more than one county, and that lines located entirely within a single county should be assessed by the county assessor.

Same—State Board of Equalization—Powers—Records Import Verity.

7. The state board of equalization is a special tribunal endowed with limited power, is charged with the performance of specific duties, and the records of its proceedings which it is required to keep import verity and are not subject to collateral attack.

Same—State Board of Equalization—Performance of Duty—How Determined.

8. The question whether the state board of equalization has or has not performed its official duty must be determined by its records alone.

Same—State Board of Equalization—Rule of Action—Statutes.

9. To the extent that Chapter 49, Laws of 1919, designates a method of procedure to be pursued by the state board of equalization in assessing telephone, electric power and transmission lines, *etc.,* to that extent it constitutes the rule and guide for its action, and a failure to conform substantially to its provisions vitiates the assessment, the same as fraud or the adoption of a fundamentally wrong principle of assessment would do.

Same — State Board of Equalization — Electric Power Lines — Manner of Assessing Property.

10. *Held,* that it is the duty of the state board of equalization, under section 6, Chapter 49, Laws of 1919, in assessing, among other properties, electric power and transmission lines, to first determine the full cash value of the line or lines of any one company whose property is situated entirely within this state, as an entity, and then to deduct from such total value the value of its property assessed by the county assessor (Chap. 48, sec. 1, Laws 1919), and assess the inter-counties property at the value remaining.

Same—State Board of Equalization—Nonperformance of Duty—*Mandamus.*

11. *Held,* on *mandamus,* that where the records of the state board of equalization showed that instead of pursuing the course prescribed by section 6, Chapter 49, Laws of 1919, for assessing the property of an electric power and transmission company, the lines of which traversed more than one county (see paragraph 9, *supra*), it valued each inter-county line separately, and, by adding such values, arrived at the total value of such inter-counties properties, disregarding the value of the plant as a whole as well as the values attached to the properties assessed locally by the several county assessors, the board must reassemble and reassess such property in the manner indicated by section 6, *supra.*

Original application for writ of mandate by the State to compel the State Board· of Equalization to reassemble and reassess the properties of the Montana Power Company, and other companies of the same nature, in the manner prescribed by Chapters 48 and 49, Laws of 1919. Peremptory writ ordered to issue.

## STATEMENT OF THE CASE.

After the opinion on motion to quash was delivered, issues were joined by answer of the board and the separate answer of each of two members. The cause was then referred to James A. Walsh, Esq., to take testimony and report findings and recommendations upon these questions:

Did the state board of equalization equalize the assessments made by the several county assessors of property belonging to the Montana Power Company, the Great Falls Power Company, the Thompson Falls Power Company, and the Montana Reservoir and Irrigation Company, so as to make the assessments represent the full cash value of the property assessed?

Did the board assess the inter-counties property belonging to these corporations, as required by law?

To the report made by the referee, the attorney general filed exceptions, and the cause was thereupon argued and submitted for final determination. All objections by the relator to the assessment of the property of the Montana Reservoir and Irrigation Company were withdrawn, and the subject matter of that assessment is no longer before us.

## Opinion—PER CURIAM.

1. Upon the hearing before the referee, the attorney general [1] offered in evidence the several reports made by these corporations to the Public Service Commission for the years 1914 to 1918, inclusive, for the purpose of showing that each of these corporations in making its reports treated its property as an entire plant, making no segregation of the different transmission lines, but regarding them as a single line and continuous property. By this evidence it was sought to furnish a basis for the inference that the board had failed to make an original assessment as required by subdivision 5, section 1, Chapter 48, Laws of 1919. These reports were again offered for the purpose of showing the cost of each plant and equipment; the amount of capital stock of each company, and the amount of its bonded indebtedness, in order to furnish a basis for the in-

ference that the board had not revised the assessments made by the several county assessors so as to make the assessments represent the full cash value of the property locally assessed. All of this evidence was excluded by the referee, and the attorney general predicates error upon the rulings. The contention must be overruled. The evidence did not reflect in any way upon the question whether the property owned by each company should be regarded by the board as an entire property and plant. This was a question to be determined by the board as a conclusion of law from the facts showing the situation of the several transmission lines, that is: Whether they were in fact intra-county or inter-county lines, to be assessed by the county assessors or by the board. It was wholly immaterial how any one of the companies considered its property. Neither was the evidence competent to show the value of the property. As was pointed out in the opinion on motion to quash, it was not within the province of this court to ascertain and fix values for the purpose of assessment.

2. Did the board review the assessments made by the county assessors?

Subdivision 7, section 1, Chapter 48 above, provides that the board shall "adjust and equalize the valuation of taxable property among the several counties  *  *  *  ; supervise and review the acts of the county assessor and the county boards of equalization; change, increase or decrease valuation  *  *  *  , and exercise such authority and do any and all things necessary to secure a fair, just and equitable valuation of taxable property among the counties." This is merely an amplification of the duty imposed on the board by section 15, Article XII, of the Constitution.

Neither the statute nor the Constitution prescribes the method [2, 3] of review or what steps shall be taken in arriving at a fair, just and equitable valuation. The minutes of the board show that the board had before it the assessments made by the several county assessors; considered and discussed those assessments; took testimony as to the value of all the property so

assessed, and approved the assessments as made, except that the board increased the valuation placed by the assessors on intra-county power transmission lines thirty per cent. The board, in this instance, was sitting, not as original assessors, but merely for the purpose of reviewing, adjusting and equalizing the assessments made by the county assessors, or taking such other steps as it might deem proper to secure a fair, just and equitable valuation of the property so assessed, but the manner in which it should proceed and the result to be reached were entirely within its own judgment and discretion. The court could compel action, in the event of the failure or refusal of the board to act, but having proceeded in the matter, exercising its own judgment and discretion, in the absence of any statutory provision directing how the board shall proceed, and in the absence of fraud or what amounts to fraudulent action, the court is powerless to compel the board to proceed in any particular manner in arriving at its conclusion or to reverse its decision. The writ of *mandamus* is not a writ to correct errors, but to compel action. (Cooley on Taxation, 2d ed., 730; 18 R. C. L. 103; *Attorney General* v. *Sanilac Supervisors,* 42 Mich. 72, 3 N. W. 260; *State ex rel. State Pub. Co.* v. *Smith,* 23 Mont. 44, 57 Pac. 449; *Danforth* v. *Livingston,* 23 Mont. 558, 59 Pac. 916; *State ex rel. Gravely* v. *Stewart,* 48 Mont. 347, 137 Pac. 854; *State ex rel. Marshall* v. *District Court,* 50 Mont. 289, Ann. Cas. 1917C, 164, 146 Pac. 743; *State* v. *Savage,* 65 Neb. 714, 91 N. W. 716; *Blomquist* v. *Board of Commrs.,* 25 Idaho, 284, 137 Pac. 174; *Illinois Cent. R. R. Co.* v. *Greene,* 244 U. S. 555, 61 L. Ed. 1309, 37 Sup. Ct. Rep. 697; *Pittsburgh etc. Ry. Co.* v. *Backus,* 154 U. S. 421, 38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114 [see, also, Rose's U. S. Notes].)

Mr. Cooley, in his work on Taxation, has this to say on the subject: "Assessors exercise a *quasi*-judicial authority and when property is to be taxed by value, the value must be determined by their judgment. If they fail to proceed in the performance of their duty, they may be compelled to act; but no court can decide for them what their judgment ought to be. These prin-

ciples are not only applicable to the case of assessors proper, but also to that of appellate boards who review and revise their decisions.'' (Cooley on Taxation, *supra.*)

What was said by this court, in *Danforth* v. *Livingston,* above, is equally applicable here; that is to say: ''There is no provision of the statute allowing any appeal from the action of these officers. It seems clear, therefore, that it was the intention of the legislature * * * to make their action final, and to deny to the courts the power to review their judgment or to assume supervisory control over their proceedings. * * * The value of property is a matter of opinion, and there must necessarily be left a wide room for the exercise of this opinion. Absolute accuracy cannot always be attained. Courts cannot be called upon, in every instance, to settle differences of opinion in this regard between the assessing officer and the property owner. Otherwise, courts would be converted into assessing boards, and, in assuming to act as such, would usurp the powers lodged elsewhere by the law-making branch of the government.''

Where a board has acted within the law, even though the result reached is clearly unjust and erroneous, *mandamus* will [4] not be granted unless bad faith or dereliction of the official clearly appears. ''The abuse of discretion must be so flagrant as to be irreconcilable with an honest judgment, courts being averse to revising the judgment of a board on the strength of allegations of undervaluations, and the single adjective 'fraudulent' without more specific allegations of fact.'' (18 R. C. L. 289; *Woodbury County* v. *Talley,* 147 Iowa, 498, Ann. Cas. 1912B, 782, 123 N. W. 746; *State of Missouri* v. *Dockery,* 191 U. S. 165, 63 L. R. A. 571, 48 L. Ed. 133, 24 Sup. Ct. Rep. 53 [see, also, Rose's U. S. Notes].) Fraud is never presumed. (*Butte Hdw. Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301.) Nor can the court inquire as to the operation of the minds of the taxing officials in fixing values. (*Boston & M. R. R.* v. *State,* 76 N. H. 86, 79 Atl. 701; *Chicago, B. & Q. R. Co.* v. *Babcock,* 204 U. S. 585, 51 L. Ed. 636, 27 Sup. Ct. Rep. 326 [see, also, Rose's U. S. Notes].)

The board did review the action of the county assessors, and whether it arrived at a correct or an erroneous conclusion as to the values placed on the properties by the assessors, is a matter with which the court cannot interfere.  The determination of [5] the value of property for the purpose of assessment is referred to the sound judgment of the assessing officers, subject to review only by the boards of equalization.  For the manner in which these officers exercise their judgment they are accountable to the people who elect them, and the burden of their responsibility cannot be imposed upon the courts.

3. Are the power lines of these companies located entirely within one county to be assessed by the county assessors, or are [6] they to be considered as parts of a continuous property operated in more than one county and assessable by the state board?

The state board of equalization is created by section 15, Article XII, of the Constitution, and by section 16 the power is conferred upon the board to assess railroads situated in more than one county.  Section 18 of the same Article authorizes the legislature to enact such laws as may be necessary to carry into effect the provisions of these sections and to others referred to in the Article.  Sections 16 and 18 remain unaltered, but section 15 was amended by a vote of the people at the general election held in November, 1916, and the amendment enlarged the powers of the board.  In the opinion heretofore rendered on motion to quash, it was pointed out that the legislature may and did authorize the board to make original assessments of inter-counties properties other than railroad property.  For many years the duties and powers of the board were defined by sections 2584 to 2592, Revised Codes, being identical with sections 3800 to 3809, Political Code of 1895, most of which sections were originally enacted in 1891 (Laws of 1891, p. 73).  However, these sections were repealed by Chapter 48 above, and at the same time Chapter 49, Laws of 1919, was passed and approved.  Section 1, Chapter 48, provides: "The powers and duties of the state board of equalization are as follows: * * * Subdivision 5.  To an-

nually assess the franchise, roadway, roadbed, rail and rolling stock and all other property of all railroads, and the pole lines and rights of way and all other property of all telegraph and telephone lines, electric power and transmission lines, ditches, canals and flumes, and other similar properties, constituting a single and continuous property operated in more than one county in the state, and to apportion such assessments to the counties in which such properties are located on a mileage basis. Provided, however, that lots and parcels of real estate, not included in right of way, with the buildings, structures, and improvements thereon, dams and power-houses, depots, stations, shops and other buildings erected upon right of way, furniture, machinery and other personal property shall not be considered as a part of any such single and continuous property, but shall be considered as separate and distinct therefrom and shall be assessed by the county assessor of the county wherein they are situate.''

The controversy over the assessment of the properties of these companies is the same, and for the purpose of illustration the property of only one need be cited. The Great Falls Power Company owns dams, power-houses, sites, *etc.* It also owns lines for the transmission of electric energy to different points in various counties in the state, with rights of way, *etc.* Some of these lines are constructed of heavy copper wire strung upon steel towers, conveying electric energy of great voltage. Other lines running to other points are of cheaper construction and less voltage; while in other instances the line is carried on wooden poles and comparatively a small amount of energy is transmitted. Some of these lines run from the power-house to points in the same county in which the power-house is situated, while others traverse two or more counties. The cost of construction of the various lines is necessarily different, in some instances amounting to several thousand dollars per mile, while in other instances it amounts to not more than $1,000 per mile. These lines, together with power-houses, dams, *etc.*, are under one ownership and management.

It will, be observed that under the statutes referred to, local property, such as real estate not included in right of way, buildings, dams, power-houses, furniture, machinery, *etc.*, is to be assessed by local authority.   Under section 2584 *et seq., supra,* lines and property situated within each county, no matter whether the line traversed two or more counties, were assessed by the local authorities of the county, thereby causing inequalities in the valuations placed thereon by the different county authorities, even though the construction might have been identical in each county, except as to mileage.   One assessor might assess that portion of a continuous line from Great Falls to Butte, within his county, at one sum, another at a different value per mile, and so on, with wide discrepancies between the values in the various counties, the fixing of the value of the property being left entirely to the several assessors and not to one central authority having the right to determine an equal mileage value for each county where there is similar construction of a particular line through each of several counties, thereby giving to each county the proportionate share of the whole property, based upon a unit value of the whole.

By an Act of the Fifteenth Legislative Assembly, a tax and license commission was created.   The commission, in pursuance of the provisions of the Act of its creation, made certain recommendations and prepared for submission to the Sixteenth Legislative Assembly certain bills, embodying substantially the provisions of Chapters 48 and 49 *supra.*   In the report accompanying the draft of the bill enacted as Chapter 48, after quoting section 15, Article XII, of the Constitution as amended, the commission said: ''There is nothing in the above section which would preclude the legislature from directing the manner of assessing any property except railways, and the commission is strongly of the opinion that the same reasons which make advisable the assessment by the state board of equalization of railroads operated in more than one county, equally apply to other forms of property alike situated and operated, such as telegraph and telephone lines, electric power and transmission lines,

bridges, canals and flumes. Such property can be more intelligently and correctly assessed as a unit by a central board than in a number of parts or segments by different assessors.'' As to the bill which was enacted into Chapter 49, the commission pointed out that this bill was for the purpose of carrying out the provisions of section 5, Chapter 48, ''relative to assessments of properties in more than one county.''

While this report is not decisive of the legislative intent, it does indicate the evil which existed under the old statute and which was apparently sought to be remedied by the new legislation. Having in mind these various situations, we think it follows that it was the legislative intent that the state board of equalization should assess all lines constituting a single and continuous property in more than one county, and that the lines located entirely within a single county should be assessed by the county assessor.

It can matter little, as a practical consideration, whether lines forming a main line or those of a branch, whether in one county or in two or more, are valued by local authority or by the state board, so long as their true value is determined and they are assessed as a part of the whole at their true value. If, as indicated later, the value of the whole plant is determined as a unit and as a going concern, and the deductions made as directed in section 6, Chapter 49, each part, whether real estate, lines in one county only, inter-county lines, whether main or branch lines, *etc.*, will be assessed at its full cash value and no element of value will escape taxation. By such methods the counties having no property of the company within their limits, other than transmission lines and rights of way, will receive their proportionate share of the entire value of the plant, no matter whether the lines therein are of cheap construction as compared with those of heavier and more costly construction; and no county will be deprived of value of property within its boundaries, and no one given an enhanced value at the expense of another; whereas, under section 2584 *et seq.*, counties having within their boundaries transmission lines only, received a tax

upon the mere value of such lines and rights of way and derived no benefit by reason of the operation and maintenance of the whole of which such lines were a part, upon which entire plant and value each county would otherwise be entitled to receive its proportionate tax.

4. Did the board assess the inter-counties properties of these companies as required by law?

The state board of equalization is a special tribunal endowed [7] with limited powers and charged with the performance of specific duties. It is a legal entity, performing public functions, and is required to keep a record of all its proceedings. (Subd. 11, sec. 1, Chap. 48, above.) These records import verity and are not subject to collateral attack. (*Montana Ore* [8] *Purchasing Co.* v. *Maher*, 32 Mont. 480, 81 Pac. 13.) To determine whether the board has performed a particular duty, recourse must be had to the records of the board and to them alone. (Subd. 5, sec. 7924, Rev. Codes.) And though the presumption will be indulged that official duty has been regularly performed, whenever the fact whether it has been performed is in issue, the issue must be determined by the records.

The powers of the board are defined by the Constitution in [9] general terms. The duties of the board are enumerated with somewhat greater particularity by the statutes. (Chapters 48 and 49, above.) To the extent that the statute (Chapter 49) designates a method of procedure, to that extent it constitutes the rule and guide for the board's action, and a failure to conform substantially to its provisions vitiates the assessment, just as fraud or the adoption of a fundamentally wrong principle would vitiate it. (*Northern Pac. Ry. Co.* v. *Carland*, 5 Mont. 146, 3 Pac. 134; *Louisville & N. R. R. Co.* v. *Bosworth*, 230 Fed. 191; *Chicago, B. & Q. R. Co.* v. *Babcock*, 204 U. S. 585, 51 L. Ed. 636, 27 Sup. Ct. Rep. 326 [see, also, Rose's U. S. Notes].)

With respect to the pretended assessment of the properties of these corporations, the board's records disclose these facts:

"Frank Bird, representing the Montana Power Company, the [10] Great Falls Power Company, the Thompson Falls Power

Company and the Montana Reservoir and Irrigation Company, appeared before the board and submitted the following power transmission and telephone lines as the property belonging to said companies operating in and continuous through more than one county in Montana together with the mileage and total value of each. * * * '' Then follows a list of the inter-counties lines, the number of miles of each, the value per mile and total value as estimated by the officers of the companies upon the basis of cost of construction less three per cent per annum for depreciation. The record then proceeds: ''Whereupon, discussion was had of the assessments of the properties as included in the list above in detail and of each item separately and upon motion duly seconded it was ordered (Mr. Ford voting 'no') that the valuation of the foregoing transmission and telephone lines be increased thirty per cent over and above the figures so returned by the companies so that such assessments will aggregate $4,916,496.06. Whereupon, after consideration of the facts and evidence before the board, said property was accordingly assessed as follows, to wit''; *etc.* Then follows a list of the same properties with the valuation as fixed by the board upon the basis indicated by the minutes.

Does this constitute a substantial compliance with the provi- [11] sions of Chapter 49 above? We think not. Section 6 of that Chapter provides: ''The value for taxation of the property and plant of each telegraph, telephone, electric power and transmission line, canal, ditch, flume, and other properties to be assessed by the state board of equalization, shall be that portion of the total value of the entire plant and property wherever situated that the total mileage within this state bears to the total mileage wherever situated, after deducting from such portion the total assessed value of all property which has been assessed for taxation in this state by the county assessors of the several counties of this state, and the state board of equalization shall assess the same accordingly.'' We think the meaning of this language is reasonably clear: It is the duty of the board first to determine the full cash value of the property as an entity—an entire

plant; if no portion of it is situated without this state, then the board must deduct from the total value, the assessed value of the property locally assessed, and assess the inter-counties property at the value remaining.

To make a concrete illustration of our view of the meaning of this statute, we again take under consideration the property of the Great Falls Power Company. It has a large amount of property subject to local assessment in each of several counties, and it has also power lines each operated as a continuous property in more than one county. The statute imposed upon the board the duty to ascertain the value of all the properties of this company considered as an entity; to then deduct from this amount the total assessed value of all properties locally assessed by the several county assessors as the same was equalized and adjusted by the several county boards of equalization and by the state board sitting as a board of equalization, and to then assess the inter-counties property at the remainder, allocating the amount to the several lines according to the value of each. Instead of pursuing this method, the records indicate that the board considered only the inter-counties lines, valued each separately, and, by adding these values, arrived at the total value of the inter-counties properties, apparently disregarding the value of the entire plant and the values attached to the properties assessed locally by the several county assessors.

We are not prepared to say that it was impossible for the board to reach a right conclusion by the method pursued. We do say that it did not pursue the method prescribed by the statute and that, if a correct conclusion was reached, it was merely an accident and not the result of deliberate judgment. The language of the supreme court of the United States, in *Railroad Co.* v. *Backus,* 154 U. S. 439, 444, is particularly pertinent here: "The true value of a line of railroad is something more than an aggregation of the values of separate parts of it, operated separately. It is the aggregate of those values plus that arising from a connected operation of the whole, and each part of the road contributes not merely the value arising from its inde-

pendent operation, but its mileage proportion of that flowing from a continuous and connected operation of the whole.''

The Constitution defines the term "property," and section 2502, 'Revised Codes, declares that all taxable property must be assessed at its full cash value. The primary purpose of Chapter 49, above, is to furnish to the board the means by which every element which enters into the taxable value of property subject to taxation may be reached. If any element of value is disregarded, to that extent the property escapes its just proportion of the burden of taxation. The statutes of this state do not prescribe any method to be pursued in determining the value of property. That question is referred to the enlightened judgment of the assessing officer or body. The board, with propriety, might have considered the value of the capital stock and bonds of each of these corporations as an index of value; or it might have considered its earning capacity, the cost of construction or cost of reproduction, or it might have disregarded all of these elements and by an inspection of the properties determined the value by a judgment which reflected the intuition of experience. In other words, it is altogether immaterial by what criterion the value is determined, so long as the property is assessed at its full cash value.

A peremptory writ of mandate will issue forthwith directed to the state board of equalization and to the members thereof, directing the board to reassemble and assess the inter-counties properties of the Montana Power Company, the Great Falls Power Company, and the Thompson Falls Power Company, in the manner provided by law, as herein indicated.